## GALAPAGOS CORPORACION TURISTICA "GALATOURS", S.A.

v.

## THE PANAMA CANAL COMMISSION

Nos. CIV.A. 00–3190, CIV.A. 00–3308.

United States District Court,
E.D. Louisiana.

April 25, 2002.

---

Christopher Ogilvie Davis, William Joseph Riviere, Robin C. Minturn, Phelps, Dunbar, LLP, New Orleans, LA, for Plaintiff.

David L. Terzian, Linda S. Renzi, Tami C. Parker, Ann K. Donohue, U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, DC, for Panama Canal Div.

Machale Andrew Miller, Iliaura Hands, Miller & Williamson, New Orleans, LA, for Seguros Sucre S.A., CLM F. Ltd., AXA Global Risks, Ltd., GAN Insurance Co. Ltd. Maritime Ins. Co., Inc., Trenwick Intern., Hannover Ruckversicherungs AG.

BARBIER, District Judge.

Before the Court is defendant Panama Canal Commission's **Motion to Dismiss Plaintiffs' Complaints, or, Alternatively for Summary Judgment** (Rec.Doc. 67). Plaintiffs Galatours (00–3190) and Seguros Sucre (00–3308) oppose the motion. The motion, set for hearing on Wednesday, March 27, 2002, is before the Court on briefs without oral argument. Having reviewed the record, the memoranda of counsel, and applicable law, the Court finds that the motion should be DENIED, for the reasons which follow.

### FACTUAL BACKGROUND

Following a fire on board the GALAPAGOS DISCOVERY, owned by plaintiff Galatours and insured by plaintiff Seguros Sucre, plaintiffs brought suit against the Panama Canal Commission ("PCC").[1] Galatours' complaint alleges that

[T]he PCC and its fire-fighting units and employees, including but not limited to the PCC's Canal Operations Captain, district Commander (Southern District), fire-fighting tugs and firefighters, failed to combat the fire on board the GALAPAGOS DISCOVERY in an effective and workmanlike manner and failed to use reasonable care under the circumstances after they undertook to fight the fire aboard the vessel. Instead, the PCC's inefficient and negligent fire-fighting actions and/or inactions, coupled with the use of improper and/or insufficient fire-fighting equipment and tugs, caused a controllable fire n board the GALAPAGOS DISCOVERY to rage out of control, caused an overloading of the vessel and its sinking, and worsened the position of the vessel as the fire could have been extinguished without causing additional fire damage and water and sinking damage to the GALAPAGOS DISCOVERY, which ultimately resulted in the total loss of the vessel.

Galatours' Complaint, ¶ VI.

Seguros Sucre's complaint alleges that "[i]n the exercise of its actions to extinguish the fire aboard the M/V GALAPAGOS DISCOVERY, the Panama Canal Commission failed to efficiently combat the fire and failed to act with the required due diligence and in a work-like [sic] manner as a result of which the M/V GALAPAGOS DISCOVERY sank in waters of the Panama Canal." Seguros Sucre's First Amended Complaint, ¶ 13.

Plaintiffs have sued the PCC under section 3772 of the Panama Canal Act ("the Act"), which provides in pertinent part:

Injuries outside locks:

Subject to section 3779(b) of this title, the Commission shall promptly adjust and pay damages for injuries to vessels, or to the cargo, crew, or passengers of vessels which may arise by reason of their presence in the Panama Canal, or waters adjacent thereto, other than the locks, when the injury was proximately caused by negligence or fault on the part of an officer or employee of the United States acting within the scope of his employment and in the line of his duties in connection with the operation of the Canal. If the negligence or fault of the vessel, master, crew, or passengers proximately contributed to the injury, the award of damages shall be diminished in proportion to the negligence or fault attributable to the vessel, master, crew, or passengers.

---

1. Seguros Sucre's suit, Civil Action 00–3308, was consolidated with the previously-filed Galatours' suit, Civil Action 00–3190.

Notwithstanding the waiver of sovereign immunity contained in this provision, the PCC argues that it is entitled to immunity pursuant to the discretionary function exception contained in the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* ("FTCA"). While the PCC could point to no prior cases in which the PCC has invoked the discretionary function exception in connection with claims brought under § 3772, the PCC argues that because courts have read the limitations of the discretionary function exception into the waiver of immunity contained in the Suits in Admiralty Act, this Court should likewise do so with respect to the waiver contained in the Panama Canal Act.

In response, plaintiff Galatours raises the threshold issue of the applicability *vel non* of the discretionary function exception to claims brought pursuant to § 3772 of the Panama Canal Act, arguing that both the FTCA and the Suits in Admiralty Act specifically exclude application of those statutes to the PCC, and further that no precedent exists for importing the exception into the Act. Galatours and Seguros Sucre also argue that even if otherwise applicable, the PCC may not avail itself of the discretionary function exception because the PCC's conduct in fighting the fire was not discretionary, but rather was mandated by internal policy directives which the PCC violated.

### DISCUSSION

#### I. *Applicability vel non of the Discretionary Function Exception to § 3772 claims.*

With respect to Galatours' argument that the discretionary function exception is not available to the government in suits brought under section 3772 of the Panama Canal Act, Galatours' point is well-taken and the Court agrees that despite the facile analogy drawn by the PCC between the Suits in Admiral Act and the Panama Canal Act to support the PCC's conclusion that the discretionary function exception of the FTCA should apply in the case at bar, the issue is not straightforward.

■ In addition to the fact that both the FTCA and the Suits in Admiralty Act specifically prohibit their application to the PCC,[2] it is also true that the Panama Canal Act contains a provision explicitly repudiating the application of the FTCA to claims like the one herein. Title 22, section 3761(e) provides: "The provisions of section 1346(b) of Title 28 and the provisions of chapter 171 of such title **shall not apply** to claims cognizable under this part."[3] (Emphasis added.)

The legislative history of the exclusion of the FTCA from the Panama Canal Act is especially relevant to the case at bar. The exclusion was added in the 1950 amendments, necessitated when Congress created the federally chartered Panama Canal Company to operate the Panama Canal. *See generally,* Morey L. Sear, *Historical Review of Treaty Relationships in the Canal Zone as to the Maritime Legal and Court System,* 57 TUL. L. REV. 1368 (June, 1983). In discussing the rationale for explicitly excluding the provisions of the FTCA from the current statute's predecessor, the Governor of the Canal Zone opined:

> The broader reason for the exclusion of the Panama Railroad Company from the Tort Claims Act is that the act is not designed to fit the needs of a corpora-

---

**2.** *See,* 28 U.S.C. § 2680(m); 46 U.S.C. § 741, respectively.

**3.** "[T]his part" comprises Title 22, sections 3761–3779 (Part 4—*Claims for Injuries to Persons or Property*), and includes section 3772, upon which plaintiff's claim is based.

tion acting as a common carrier and performing the other commercial functions which are a part of the Company's operations. Since it is engaged in business as a common carrier and in other commercial enterprises, **the basic policies underlying governmental immunity from suit do not apply to the Company, and it is desirable if not essential to continue unimpaired the ability of the Company to effect prompt settlement of meritorious claims and the amenability of the Company to suit in the ordinary course.**

*Gulf Oil Corp. v. Panama Canal Co.,* 407 F.2d 24, 30 at n. 9, quoting S.Rep. No. 167, 1949 U.S.Code Cong. Service at 1591–1593 (emphasis added).

Similarly, "both the Senate and the House Committees reported to Congress that: 'The varied activities of the Company * * * are not those to which the principle of governmental immunity to suit should be applied.'" *Id.* at 1590 (other citations omitted). Thus, legislative history reflects that the exclusion of the FTCA to Panama Canal Act claims was achieved precisely to ensure that the sovereign immunity defense was not available for claims brought under the Act.

Of course, the Court acknowledges that the United States' presence and function in Panama has changed greatly since 1950, and many of the considerations upon which the sentiments voiced by the Governor and the House and Senate Committees rested have evaporated. It may well be that as a result, the remaining activities of the PCC are ones to which the principle of governmental immunity should apply. Nevertheless, the Panama Canal Act, in its current form, still contains the provision prohibiting application of the FTCA to section 3771 claims, and it was not removed when the sovereign immunity issue was revisited

in connection with the adoption of the Panama Canal Act of 1979, which was adopted without the general waiver of sovereign immunity included in the predecessor Canal Zone Code. *See* Sear, 57 TUL L. REV. at 1371.

This background, coupled with the statute as written, could lead the Court to draw two opposing conclusions. On the one hand, one might find that diminution of U.S. activities in the Canal, the rejection of the general waiver of sovereign immunity contained in the prior Canal Zone Code, and the distinct limits contained in the claims-handling provisions of the Act, indicate that the Court should construe the waiver contained in 3772 as narrowly as possible in favor of the sovereign and thus give effect to the discretionary function exception, based on the analogy to the Suits in Admiralty Act.

On the other hand, one could also reasonably conclude that precisely because the claims process is set forth in such detail in the Act, and because the scope of sovereign immunity has been revisited in connection with the Act on multiple occasions without incorporating a discretionary function exception, that section 3772 (and related provisions) set forth a *sui generis* claims process characterized by the PCC's complete amenability to suit within the parameters set forth in the statute, and therefore the discretionary function exception should not apply because it is not provided for in the statute.

The Court finds the latter approach superior, because to adopt the former (and find that the discretionary function exception applies to section 3772 claims), requires the Court to disregard the plain language of the statute, even given a legislative history indicating that the language was adopted specifically for the purpose of barring the sovereign immunity defense, and essentially find that Congress meant

to delete the provision in 1979 or 1990 but forgot to do so. It must also overlook 28 U.S.C. § 2680(m), excepting Panama Canal activities from coverage under the FTCA. Accordingly, the Court finds that the discretionary function exception to the government's waiver of sovereign immunity does not apply to plaintiffs' claims brought under 22 U.S.C. § 3772.

However, as discussed more fully below, the Court also finds that even if the discretionary function exception were generally applicable to section 3772 claims, the facts of this case do not support a finding that the PCC is entitled to immunity.

## II. *Applicability of Discretionary Function Exception to facts of instant case.*

Under the discretionary function exception, the government is not liable for:

> any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

Courts apply a two-pronged test to determine whether challenged government conduct falls within the discretionary function exception. *First*, "the conduct must be discretionary in nature, that is it must involve an element of judgment or choice." *Theriot v. United States*, 245 F.3d 388, 397 (5th Cir.1998)(citing *United States v. Gau-*

*bert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991)). If the challenged conduct was undertaken pursuant to a federal statute or regulation which prescribes it, this prong is not met, because "the employee has no rightful option but to adhere to the directive." *Id.* (internal quotations omitted).

*Second*, "the judgment or decision must be grounded on considerations of social, economic, or political public policy." *Id.* This prong reflects the fact that the purpose of the exception is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2764–65, 81 L.Ed.2d 660 (1984).

In applying the two-part test, it is important at the outset to identify exactly what challenged action the government claims is protected by the exception. Summing up the relevant allegations of the plaintiffs' complaints (*see supra*, at page 575), the PCC has classified the challenged conduct into four categories, characterizing plaintiffs' complaints as being directed toward: (1) the manner in which the fire was combated; (2) negligence of the PCC in conducting a search and rescue operation to the detriment of fighting the fire; (3) failure of the PCC to have or use adequate equipment; and (4) negligent tactical decisions, including breaking windows of the vessel and failing to timely and properly deploy the $CO_2$ system. PCC's Memo, 14.

Having defined the challenged conduct,[4] the Court must ask whether the

---

4. In its brief, Galatours argues that the discretionary function exception does not apply because the PCC's decision to take control of the fire was not discretionary but rather was mandated by the Coordinated Fire Protection

Plan in place at the time of the fire, suggesting that the decision to fight the fire comprises the challenged conduct the Court must scrutinize. However, a review of both complaints bears out that it is the **method** of

challenged conduct was a matter of choice for the acting employee. "[C]onduct cannot be discretionary unless it involves an element of judgment or choice.... [I]f the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect." *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Only where there are no statutory, regulatory, or procedural policy directives governing the employee's course of conduct may a court proceed to the second step of the *Berkovitz* test. *Id.*

■ In the case at bar, the plaintiffs argue that the PCC's actions in fighting the fire were prescribed in part by federal policy directives. In response to Galatours' request for all "written instructions, manuals, guidelines and/or special orders applicable to the PCC," the PCC produced the U.S. Department of Transportation Maritime Administration's *Fire Prevention, Firefighting and Fire Safety Manual* ("MARAD Manual") and the National Fire Protection Association's *1405 Land Based Fire Fighters Who Respond to Marine Vessel Fires* (1990 ed.).[5] Plaintiffs argue that the guidelines contained in these publications, one of which was promulgated by an agency of the United States, applied to the PCC's failed firefighting efforts at issue in this case, and were not adhered to by the government personnel on the scene.

For instance, Galatours argues that despite the MARAD Manual instruction that

"[d]uring an indirect attack the fire area must be made as air tight as possible, to keep oxygen out and the extinguishing agent in," Exh. 3 at 202, the PCC and Commander Shannon did not close the watertight doors leading to the vessel's engine and stabilizer rooms, and in fact, fed the fire by breaking the windows and placing a ventilation fan on one of the broken windows, thus violating the PCC's directives. *See*, PCC's Statement of Material Facts, ¶ 21. Likewise, Galatours complains that Commander Shannon's decision to wait an hour after responding to the fire to attempt to put it out, while conducting a search for a missing crew member, violated its MARAD directive that "[i]f firefighters can get past the fire while others control it, the rescue may be accomplished immediately. If the fire cannot be contained easily, it may be best to attack and control the fire before attempting to rescue." *Id.* at 204; *see also* PCC's Statement of Material Facts, ¶¶ 14, 15, 18, 19.

The Court finds that the evidence pointed to strongly suggests that in fighting the fire, the PCC was subject at least in part to non-discretionary policy directives that government employees may have violated. At the very least, a genuine issue of material fact on this point has been raised. The Fifth Circuit, applying *Berkovitz*, has recently held that the existence of a genuine issue of material fact regarding whether a fire department procedural policy dictated firefighters' conduct, precludes summary judgment on the sover-

firefighting, not the **decision** to fight the fire that is in issue. (Seguros Sucre appears to concede that the PCC's decision was discretionary.) At any rate, it appears to the Court that the initial decision was discretionary, since the regulations governing the Panama Canal at the time permitted the government to take control of firefighting efforts in its discretion (35 C.F.R. § 117.5); and similarly, the Coordinated Fire Protection Plan states

that "the Panama Canal Commission maintains vested interest and **has the right** to take command of marine fires and emergencies which could disrupt canal operation ...." Galatours' Opp., Exh. 1: Coordinated Fire Plan, 7 (emphasis added).

5.  The manuals are attached to Galatours' Opposition as Exhibits 3 and 4.

eign immunity issue. *See, Commerce and Industry Ins. Co. v. Grinnell Corp.*, 280 F.3d 566 (5th Cir.2002). Accordingly, the Court finds that the government has not borne its burden of establishing the first *Berkovitz* prong,[6] and it is not entitled to either dismissal or summary judgment. Therefore,

**IT IS ORDERED** that the PCC's **Motion to Dismiss Plaintiff's Complaints, or, Alternatively for Summary Judgment** (Rec.Doc. 67) should be and is hereby **DENIED.**

---

6. Having found that the first prong is not met, the Court does not proceed to the second prong. *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1954.